BOLIN, Justice.
 

 William Franklin Hill was indicted for theft of property in the first degree, see § 13A-8-5, Ala.Code 1975. On April 4, 2007, Hill entered a plea of guilty to the
 
 *5
 
 charge. After accepting the guilty plea, the trial court postponed the sentencing hearing pending a determination as to whether Hill was eligible to serve his sentence on release to the Montgomery County Community Corrections Program (hereinafter referred to as “the community-corrections program”). On May 1, 2007, a different judge sentenced Hill, as a 3-time habitual offender, to 20 years’ imprisonment, to be served in the community-corrections program. On May 30, 2007, Hill filed a motion to reconsider the sentence or, in the alternative, to withdraw the guilty plea, in which he stated that “[t]he State and the defense had agreed that a sentence under the sentencing standards, to be served in community corrections, if [Hill] were eligible, would be appropriate.” The trial court denied the motion.
 

 On June 12, 2007, Hill was arrested on a delinquency charge for failing to reside at the residence he had listed with the community-corrections program. On June 13, 2007, Hill was taken before the trial court for an initial appearance as required by Rule 27.5(a), Ala. R.Crim. P. During the initial appearance, the trial court revoked Hill’s sentence to the community-corrections program and ordered him to serve his 20-year sentence with the Alabama Department of Corrections.
 

 On July 13, 2007, Hill filed a second postjudgment motion, requesting that the trial court reconsider its decision to revoke his community-corrections sentence and for enforcement of a plea agreement he claims he had made with the State. The motion, filed approximately 70 days after Hill had been sentenced and seeking enforcement of a plea agreement, was untimely. See Rule 24.1, Ala. R.Crim. P. The trial court denied the motion, and Hill appealed.
 

 The Court of Criminal Appeals affirmed the trial court’s judgment in an unpublished memorandum.
 
 Hill v. State,
 
 71 So.3d 1 (Ala.Crim.App.2008). Presiding Judge Baschab and Judge Welch issued special writings concurring in part and dissenting in part. We granted Hill’s petition for the writ of certiorari in order to determine (1) whether there was a plea agreement and (2) whether Hill was afforded due process before his sentence to the community-corrections program was revoked.
 

 Hill first contends that he should have been allowed to withdraw his guilty plea because, he says, the trial court failed to sentence him pursuant to the terms of a plea agreement that he says he entered into with the State. The Court of Criminal Appeals held that the issue whether the trial court failed to sentence Hill pursuant to a plea agreement was not preserved for appellate review because, that court stated in its unpublished memorandum, Hill, in his first postjudgment motion filed on May 30, 2007, “failed to raise any claim that a plea agreement existed between [him] and the State.” Although Hill did not include precise language in his motion to the effect that a plea agreement between him and the State existed, he nonetheless referred to such an agreement between him and the State regarding the sentencing standards, i.e., “[t]he State and defense had agreed that a sentence under the sentencing standards, to be served in Community Corrections, if [Hill] were eligible, would be appropriate.” We conclude that this general language in Hill’s May 30, 2007, motion clearly placed the trial court on notice that Hill wished to withdraw his guilty plea based on the existence of some agreement between him and the State regarding sentencing standards. Consequently, we hold that Hill’s timely filed motion was sufficient to preserve for
 
 *6
 
 review the issue whether a plea agreement did in fact exist between Hill and the State. See
 
 Bagley v. State,
 
 681 So.2d 262, 264 (Ala.Crim.App.1995) (language in the appellant’s motion, although not precise, “placed the trial court on notice that [the appellant] wanted to withdraw his plea because [he] was objecting to not being sentenced in accordance with the purported plea agreement”).
 

 It is well settled that “‘[w]hen the trial judge decides not to carry out an agreement reached between the prosecutor and the defense counsel, the accused must be afforded the opportunity to withdraw his or her guilty plea on motion promptly made.’”
 
 Ex parte Clay,
 
 562 So.2d 1307, 1309 (Ala.1990) (quoting
 
 Ex parte Otinger,
 
 493 So.2d 1362, 1364 (Ala.1986)). At issue in the instant case is whether a plea agreement did in fact exist and, if so, what the terms of that agreement were.
 
 Ex parte Clay,
 
 562 So.2d at 1309.
 

 No written plea agreement is included in the record. However, the following exchange occurred during the guilty-plea hearing on April 4, 2007:
 

 “THE COURT: I want to go over it. If you have any questions, this is the time to ask. I see you are charged with theft of property. Is this just a straight-up plea?
 

 “[DEFENSE COUNSEL]: [The prosecutor] and I have talked about this. [The prosecutor] has done a preliminary calculation of the sentencing standards applicable in this case.
 
 It is my understanding the State has no objection to the Court sentencing under the Sentencing Standard preliminary calculation, which would be 76 to 115 months with split time.
 

 “THE COURT: I can’t hear you. “[DEFENSE COUNSEL]: Preliminary calculations would be a base sentence of 76 to 115 months with split time 12 to 19 months.
 
 I understand the State has no objection. The State has no opposition to that.
 
 Also, it appears he is eligible for Community Corrections looking at his record and also talking to Community Corrections. I suppose if we can get that worked out with him,
 
 the State has no problem with that.
 

 “[PROSECUTOR]: That’s correct, Your Honor.
 

 [[Image here]]
 

 “THE COURT: With three prior felonies and this is a Class B, the sentence is mandatory life or any term of not less than 20. Is that right?
 

 [[Image here]]
 

 “THE COURT: And a fine up to $60,000. Now, you understand what the range of the penalty could be?
 

 “[HILL]: Yes, Your Honor.
 

 “THE COURT: Has anyone promised you anything or threatened you in any way or offered you anything in order to get you to plead guilty?
 

 “[HILL]: No, ma’am.”
 

 (Emphasis added.)
 

 As previously noted, the sentencing hearing was delayed pending a determination as to whether Hill qualified to serve his time in the community-corrections program. The following exchange occurred during the sentencing hearing on May 1, 2007, before a different judge from the judge who accepted Hill’s guilty plea on April 4, 2007:
 

 “THE COURT: I reviewed the pre-sen-tence report. Anything else you want me to consider?
 

 “[DEFENSE COUNSEL]: Yes, sir, Your Honor. First, [a different trial judge] took the plea in the case, and the
 
 State and defense had said there wouldn’t be a problem from either side
 
 
 *7
 

 if the Court went under the sentencing standards. Also, I believe the State said if Mr. Hill was eligible for community corrections, they wouldn’t have any objection to
 
 that....
 
 It would be my recommendation to the Court that the Court consider either Community Corrections or a suspended sentence with perhaps referral to Mental Health Court.
 

 “THE COURT: Was there a
 
 plea agreement
 
 at the time?
 

 “[PROSECUTOR]: The only one it would be community corrections
 
 if
 
 he made it into the program
 
 or
 
 it would be a split sentence under the sentence guidelines, which I don’t know that you have a copy of.
 

 “[DEFENSE COUNSEL]: It was read into the record at the time of the plea.
 

 “[PROSECUTOR]: That was the
 
 only agreement
 
 we had.
 

 [[Image here]]
 

 “THE COURT: I am not going to follow that. I am going to follow normal sentencing standards as set out. I believe according to this note from when [the initial trial judge] took the plea, the Habitual Offender Act is applicable. Three priors.
 

 “[THE PROSECUTOR]: The State would move to invoke that.
 

 “THE COURT: Any objection?
 

 “[DEFENSE COUNSEL]: No, sir.
 

 [[Image here]]
 

 “THE COURT: Mr. Hill, I am going to sentence you to a term of imprisonment in the Department of Corrections for 20 years. You will be permitted to serve this on community corrections since that has been approved by Mr. Tate.
 

 [[Image here]]
 

 “[HILL]: Thank you, Your Honor.”
 

 (Emphasis added.)
 

 During the sentencing hearing, defense counsel specifically represented to the trial court that it was defense counsel’s understanding that “there wouldn’t be a problem from either side
 
 if
 
 the Court went under the sentencing standards” and that the State would not have any objection
 
 if
 
 Hill was eligible for the community-corrections program. (Emphasis added.) Defense counsel then stated that it would be his recommendation that the trial court consider either the community-corrections program or a suspended sentence with perhaps referral to a mental-health court.
 
 [1]
 
 This recommendation by defense counsel clearly indicates that there was not a binding agreement between defense counsel and the State, pursuant to which the State agreed to recommend to the trial court that Hill be sentenced under the voluntary sentencing guidelines. Instead, the State admitted that there was an agreement not to object if the trial court did, in fact, sentence Hill according to the voluntary sentencing guidelines
 
 or
 
 if the trial court sentenced Hill to serve his sentence in the community-corrections program. The trial judge at the sentencing hearing specifically inquired as to whether a plea agreement existed. The prosecutor responded that “it would be community corrections
 
 if
 
 [Hill] made it into the program
 
 or
 
 it would be a split sentence under the sentence guidelines.” (Emphasis added.) Defense counsel did not object to the prosecutor’s interpretation of the agreement. The trial judge then stated that based on Hill’s pri- or convictions, he was going to follow normal sentencing standards instead of the voluntary sentencing guidelines of § 12-15-34, AIa.Code 1975. However, the trial judge then sentenced Hill, as an habitual offender, to a 20-year sentence under the
 
 *8
 
 “normal” sentencing standards but ordered that Hill serve his sentence in the community-corrections program. Consequently, we hold that the trial court accepted the plea agreement pursuant to which the State agreed not to object if Hill was ordered to serve his sentence in the community-corrections program, as that agreement was explained to the court by the prosecutor. Accordingly, the trial court did not err in denying Hill’s motion to withdraw his guilty plea because the trial court had failed to sentence him in accordance with the terms of a plea agreement.
 

 Hill next contends that he was denied due process when the trial court revoked his community-corrections sentence. Hill argues, among other things, that he was not afforded an opportunity to call witnesses on his behalf, to cross-examine the State’s witnesses, or to present any other evidence on his behalf. In its brief, the State concedes that the trial court failed to comply with Rule 27.6, Ala. R.Crim. P., which provides that before a trial court can revoke a defendant’s probation (or community-corrections sentence), it must hold a hearing and at that hearing each party is entitled to present evidence and cross-examine adverse witnesses.
 

 As previously noted, the trial court, on May 1, 2007, sentenced Hill to 20 years’ imprisonment, to be served in the community-corrections program. On June 12, 2007, Hill was arrested on a delinquency charge and was taken the next day before the trial court for an initial appearance in accordance with Rule 27.5, Ala. R.Crim. P. The trial court, at the outset, made the following statement:
 

 “THE COURT: We had you on community corrections. You have been charged with violating some of the conditions of your community corrections in that you failed to reside at the residence that you listed with the community correctional officer. In fact, he said when a home visit was made on June 11, he discovered you had never lived there. Based upon that, your privilege of community corrections will be revoked and your sentence will be put into effect. Good luck, sir.”
 

 After the trial court revoked Hill’s community-corrections sentence, Hill gave a lengthy explanation regarding his living arrangements, admitting that he had not lived at the address he had given the community-corrections officer. The trial court thereafter made the following comment:
 

 “THE COURT: I am sorry. I can’t agree with you, that you have done everything, because one of the minimum requirements is telling the Community Corrections officer where you live. I don’t think you have been living where you told him you lived. So sorry. I gave you an opportunity. Good luck, sir.”
 

 Hill appealed to the Court of Criminal Appeals, arguing that the trial court erred in not complying with the due-process requirements of Rule 27.5 and Rule 27.6, Ala. R.Crim. P. The Court of Criminal Appeals affirmed the trial court’s revocation order on the ground that Hill had not preserved this issue for appellate review because, it said, he failed to make any objections on those grounds at the trial court level.
 

 We first note that the revocation of a sentence served under a community-corrections program is treated the same as a probation revocation. See § 15 — 18— 175(d)(3)b., Ala.Code 1975 (“A revocation hearing shall be conducted before the court prior to revocation of the community corrections sentence. The court shall apply the same due process safeguards as a probation revocation proceeding and may
 
 *9
 
 modify or revoke the community punishment sentence and impose the sentence that was suspended at the original hearing or any lesser
 
 sentence..."); Richardson v. State,
 
 911 So.2d 1114 (Ala.Crim.App.2004) (treating the revocation of a community-corrections sentence as a probation revocation); see also
 
 Jackson v. State,
 
 867 So.2d 365 (Ala.Crim.App.2003) (providing that the rules of preservation apply to probation-revocation proceedings unless no revocation hearing is conducted, the record does not contain an adequate written or oral revocation order, or the probationer was not informed of his right to counsel). We hereinafter sometimes in our discussion of the due-process issue presented here make reference to probationers and probation-revocation proceedings.
 

 In
 
 Morrissey v. Brewer,
 
 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court set forth the minimum constitutional requirements that must be met before parole may be revoked. These requirements include, among other things, affording the parolee the “opportunity to be heard in person and to present witnesses and documentary evidence” and “the right to confront and cross-examine adverse witnesses.” 408 U.S. at 489. These specific rights were extended to probationers in probation-revocation proceedings by the United States Supreme Court in
 
 Gagnon v. Scarpelli,
 
 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and by this Court in
 
 Armstrong v. State,
 
 294 Ala. 100, 312 So.2d 620 (1975); see also Rule 27.5 and Rule 27.6, Ala. R.Crim. P., which are intended to comply with these due-process requirements.
 

 In
 
 Ex parte Anderson,
 
 999 So.2d 575 (Ala.2008), this Court stated:
 

 “A probationer who makes his initial appearance under Rule 27.5, Ala. R.Crim. P., is entitled to a revocation hearing. Rule 27.5(a)(4), Ala. R.Crim. P. (at the initial appearance, the ‘judge ... shall ... set the date of the revocation hearing.’)....
 

 [[Image here]]
 

 “... Generally, arguments not presented to the trial court are waived on appeal.... However, in
 
 Puckett v. State,
 
 680 So.2d 980, 983 (Ala.Crim.App.1996), the Court of Criminal Appeals recognized two exceptions to that general rule when the case involves the revocation of probation:
 

 “ ‘[The Court of Criminal Appeals] has recognized, in probation revocation proceedings, only two exceptions to the general rule that issues not presented to the trial court are waived on appeal: (1) the requirement that there be an adequate written order of revocation ..., and (2) the requirement that a revocation hearing actually be held.’ ”
 

 999 So.2d at 577-78.
 
 [2]
 

 In the present case, the Court of Criminal Appeals held that because Hill’s challenge to the sentence-revocation hearing did not fall within one of the exceptions noted in
 
 Puckett,
 
 Hill had to preserve his
 
 *10
 
 objections to the hearing, and that, because he did not, he had waived the issue for appellate review. Hill argues that his case falls within the second
 
 Puckett
 
 exception because, he says, the trial court failed to hold a revocation hearing. We agree. The trial judge in the instant case revoked Hill’s community-corrections assignment during Hill’s initial appearance, without affording Hill a meaningful hearing to be set at a later date. As a result, Hill was not afforded the opportunity to present witnesses, nor was he afforded the opportunity to confront and cross-examine witnesses. Accordingly, the minimum due-process requirements of
 
 Morrissey, Gag-non,
 
 and
 
 Armstrong, supra,
 
 were not met.
 

 Based on the foregoing, we reverse that portion of the Court of Criminal Appeals’ decision holding that Hill failed to preserve for appellate review the issue whether due process was afforded at the revocation hearing, and we remand this case to that court for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
 

 SHAW, J., recuses himself.
 
 *
 

 [1]
 

 . Mental-health court is a diversionary program for defendants with mental illnesses.
 

 [2]
 

 .
 
 Rule 27.5(a)(4), Ala. R.Crim. P., specifically provides that during the probationer's initial appearance, the trial judge shall "[s]et the date of the revocation hearing." Rule 27.6(a), Ala. R.Crim. P., states that a hearing “to determine whether probation should be revoked shall be held before the sentencing court within a reasonable time after the probationer’s initial appearance under Rule 27.5.” Rule 27.6(d)(1), Ala. R.Crim. P., additionally provides that each party "shall have the right to present evidence and the right to confront and to cross-examine adverse witnesses who appear and testify in person. The court may receive any reliable, relevant evidence not legally privileged, including hearsay."