**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10117

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSHUA EUGENE GAINES,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:22-cr-00165-LCB-HNJ-1

_____

Before NEWSOM, BRASHER, and ED CARNES, Circuit Judges.

NEWSOM, Circuit Judge:

After pleading guilty to a crime classified by Alabama law as a Class D felony, Joshua Gaines was caught in possession of a firearm. He was charged with and convicted of violating 18 U.S.C. § 922(g)(1)—colloquially, the federal "felon-in-possession" statute.

Gaines appealed, arguing, as relevant here, that the government had presented insufficient evidence to convict him and, therefore, that the district court erred in refusing to grant his motion for judgment of acquittal. For reasons we will explain, we agree with Gaines that the statute doesn't cover his conduct. Accordingly, we vacate Gaines's conviction and remand to the district court with instructions to grant the motion for judgment of acquittal.

## I

In November 2019, Joshua Gaines pleaded guilty in an Alabama court to the crime of "receiving stolen property in the third degree." Gov't Trial Ex. 2, at 1, Dkt. No. 74-2 (citation modified). Alabama law classifies that offense as a Class D felony. *See* Ala. Code § 13A-8-18.1(b). Before pleading guilty, Gaines's lawyer told him (and a state-provided "Explanation of Rights and Plea of Guilty" form confirmed) that he would receive a "non-prison" sentence of 13 to 31 months, suspended—meaning that it would be deferred provided that he continued to satisfy his terms of probation. *See* Gov't Trial Ex. 2 at 4; Jury Trial Tr. II, at 260:16–22, Dkt. No. 89.

Gaines's lawyer was right. Given Gaines's criminal history, the applicable law foreclosed a sentence that included any actual prison time. Under Alabama law at the time, a Class D felony generally triggered a "definite term of imprisonment" of "not more than 5 years or less than 1 year and 1 day"—but, importantly, it also mandated that any sentence be "in accordance with subsection (b) of Section 15-18-8." *See* Ala. Code § 13A-5-6(a)(4) (2019) (amended

2023). Section 15-18-8(b), in turn, barred judges from imposing prison sentences on Class D felons who hadn't been convicted of either (1) three or more felonies or (2) two or more serious felonies. *See* Ala. Code § 15-18-8(b), (e) (2019) (amended 2023). Instead, for those offenders, it required a sentence of "probation, drug court, or a pretrial diversion program," or confinement in "a consenting community corrections program" for "a period not exceeding two years"—or, if no community corrections program existed, in a "high-intensity probation under the supervision of the Board of Pardons and Paroles." *Id.*

After pleading guilty, Gaines was given a 24-month suspended sentence and was placed on probation for two years. Following his sentencing, Gaines signed a "Registration of Felons" form notifying him that, pursuant to the Federal Gun Control Act of 1968, he couldn't possess a firearm.

Six months later, police officers stopped a car in which Gaines was a passenger. The officers discovered a gun in the car, and Gaines admitted that it was his. The officers arrested Gaines and took him to jail.

## II

The government indicted Gaines on two counts: (1) possession of a firearm after having "been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year," in violation of 18 U.S.C. § 922(g)(1); and (2) possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).

At trial, after the government rested, Gaines moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, contending, as relevant here, that there was insufficient evidence to prove the key fact underlying count one—namely, that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The court denied Gaines's motion but gave him leave to refile at the close of all evidence. He did so, but the district court again denied relief. Although the jury acquitted Gaines on the § 5861(d) count, it convicted him on the § 922(g)(1) count. He was thereafter sentenced to 51 months in prison and three years of supervised release.

Before us, Gaines presents assorted challenges to evidentiary rulings, jury instructions, and sentencing determinations. Because we hold that Gaines is entitled to a judgment of acquittal on the § 922(g)(1) count, we needn't reach any of the remaining issues.[1]

## III

When a defendant challenges the sufficiency of the evidence, "the verdict must stand if the[re] is substantial evidence to support it, that is unless no trier of fact could have found guilt beyond a reasonable doubt." *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997) (citation modified). Here, Gaines's challenge

---

[1] "This Court reviews *de novo* whether there is sufficient evidence to support a guilty verdict in a criminal trial," "view[ing] evidence in the light most favorable to the Government and resolv[ing] all reasonable inferences and credibility evaluations in favor of the verdict." *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014).

24-10117                Opinion of the Court                5

to the sufficiency of the evidence turns on the meaning of 18 U.S.C. § 922(g)(1). Section 922(g)(1) is colloquially—indeed, almost ubiquitously—known as the "felon-in-possession" statute. *See, e.g.*, *United States v. Dubois*, 139 F.4th 887, 889 (11th Cir. 2025). As it turns out, though, it doesn't actually use the word "felon." If it did, this would be an easier case. After all, Gaines was convicted of a crime that Alabama law expressly classifies as a Class D felony, and he thereafter possessed a firearm.

But alas, § 922(g)(1) doesn't prohibit *felons* from possessing firearms. Rather, its terms are more precise: "[I]t shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce[] any firearm or ammunition." 18 U.S.C. § 922(g)(1). The question for us is whether § 922(g)(1), as written, covers Gaines's conduct. We conclude that it does not.[2]

The case turns on the meaning of one statutory phrase—"convicted . . . of[] a crime punishable by"—and one term—"imprisonment." In the discussion that follows, we will explain the proper interpretation of both and then apply § 922(g)(1), so interpreted, to Gaines's case.

---

[2] It's true, of course, that as a general matter, "[a] 'felony,' . . . is a 'serious crime usu[ally] punishable by imprisonment for more than one year or by death.'" *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 574 (2010) (quoting *Felony*, *Black's Law Dictionary* (9th ed. 2009)). But as this case demonstrates, that's not uniformly true.

## A

First up, "convicted . . . of[] a crime punishable by." 18 U.S.C. § 922(g)(1). That phrase might be understood in either of two different ways. Perhaps, as the government argues, it should be read in an "offense-specific" manner, such that a reviewing court looks to the term of imprisonment generally authorized by the statute underlying the predicate conviction, without regard to the defendant's particular circumstances. Alternatively, as Gaines contends, it could be read in a "defendant-specific" manner, such that its application turns on the length of the term of imprisonment to which the defendant himself was potentially subject given the circumstances of his case.

On its face, § 922(g)(1)'s would seem to suggest the government's preferred offense-specific understanding. Most notably, the phrase "punishable by imprisonment for a term exceeding one year" modifies the word "crime"—not some other term in the statute, such as "person" or "convicted."[3] So, the argument goes, a

---

[3] Technically speaking, the term "punishable" is a postpositive adjective that modifies the noun "crime." "The basic rule for the placement of adjectives . . . is that single adjectives . . . occur in attributive position"—which is to say that the adjective comes right before the noun it modifies. Rodney Huddleston & Geoffrey K. Pullum, *The Cambridge Grammar of the English Language* 445 (2002). One exception is when the adjective has its own "post-head dependents," which are words describing the adjective. *Id.* In that case, the adjective occurs postpositively—that is, comes *after* the noun it modifies. For example, in the phrase "members [*dissatisfied* with the board's decision]," "members" is the noun, "dissatisfied" is the postpositive adjective modifying

24-10117                Opinion of the Court                7

reviewing court should examine the "punish[ment]" available for the "crime" of conviction generally, rather than the defendant's particular conduct. Moreover, as we have clarified in another context, "[b]y their very nature, 'able' and 'ible' words connote a person's or thing's character, quality, or status—which, importantly for present purposes, exists independent of any particular facts on the ground." *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1299 (11th Cir. 2018). So, one might say, just as in *Barton* "an alien [could] be rendered *inadmissible* regardless of whether he is actually seeking admission," *id.*, a crime can be "*punishable* by imprisonment for a term exceeding one year" regardless of whether the defendant himself is actually subject to imprisonment for such a term, 18 U.S.C. § 922(g)(1) (emphasis added). Finally, it's worth noting that before the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010)—more on that shortly—a number of our sister circuits had interpreted § 922(g)(1) in an offense-specific manner. *See, e.g.*, *United States v. Jones*, 195 F.3d 205, 207 (4th Cir. 1999), *abrogated by United States v. Simmons*, 649 F.3d 237, 241 (4th Cir. 2011) (en banc); *United States v. Murillo*, 422 F.3d 1152, 1154 (9th Cir. 2005), *overruled by United States v. Valencia-Mendoza*, 912 F.3d 1215, 1219

the noun, and the words "with the board's decision" are the adjective's posthead dependents. *Id.* Section 922(g)(1) is organized in exactly the same way. For "crime [*punishable* by imprisonment for a term exceeding one year]," "crime" is the noun, "punishable" is the postpositive adjective modifying the noun, and the words "by imprisonment for a term exceeding one year" are the adjective's post-head dependents.

(9th Cir. 2019); *United States v. Hill*, 539 F.3d 1213, 1219 (10th Cir. 2008), *overruled by United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014); *see also United States v. Guzman-Tlaseca*, 546 F.3d 571, 579 (8th Cir. 2008) (interpreting the materially identical 21 U.S.C. § 802(44)), *overruled by United States v. Haltiwanger*, 637 F.3d 881, 883 (8th Cir. 2011).

But—and it's a big but—whatever the merits of the offense-specific interpretation of § 922(g)(1), we think that analogous Supreme Court precedent forecloses it and requires the defendant-specific reading instead. First, there is *Carachuri*. There, the Court examined a "maze" of statutory provisions in the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1537. 560 U.S. at 567. The baseline provision allows certain immigrants subject to removal to apply for discretionary relief if, among other things, they haven't been "convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). In relevant part, the term "aggravated felony" is defined as "any felony punishable under . . . the Controlled Substances Act." 18 U.S.C. § 924(c)(2). And finally, the term "felony" is defined—again, in relevant part—as "a crime for which the 'maximum term of imprisonment authorized' is 'more than one year.'" *Carachuri*, 560 U.S. at 567 (quoting 18 U.S.C. § 3559(a)).

Importantly, therefore, the architecture of the interlocking statutes in *Carachuri* was materially identical to § 922(g)(1)'s. Together, those provisions applied to aliens "convicted" of any "aggravated felony," defined to mean any "felony punishable" in a certain manner. But the Supreme Court rejected what it called the

"hypothetical felony approach." *Id.* at 580. The Court said that manner of interpreting the provisions—in effect, what we've called the offense-specific approach—"ignore[d] the text of the INA." *Id.* at 575–76, 580. Rather than focusing on the word "punishable," as the offense-specific reading would, the Court trained its attention on the word "*convicted*," saying that it "indicates that we are to look to the conviction itself as our starting place, not to what might have or could have been charged." *Id.* at 576. Ultimately, the Court there rejected the government's appeal to "[t]he mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction," could have authorized an aggravated-felony conviction. *Id.* at 582.

The Supreme Court's follow-on decision in *Moncrieffe v. Holder*, 569 U.S. 184 (2013), is perhaps even more closely on point. Interpreting the same INA provision at issue in *Carachuri*, the Court said that § 1229b(a)(3)'s "upshot" was "that a noncitizen's *conviction of an offense* that the Controlled Substances Act [] makes *punishable by more than one year's imprisonment* will be counted as an 'aggravated felony' for immigration purposes." *Id.* at 188 (emphasis added). The similarities between *Moncrieffe* and this case go beyond statutory architecture. Like Gaines here, Moncrieffe was convicted of an offense that prescribed a default term of imprisonment of more than a year but that was subject to exceptions—in particular, a crime "punishable by five years' imprisonment '*except* as provided' in paragraph (4)," which made it "punishable as a misdemeanor" if it involved "only 'a small amount of marihuana for no

remuneration.'"  *Moncrieffe*, 569 U.S. at 196 (quoting 21 U.S.C. § 841(b)(1)(D), (b)(4)).

Just as it had in *Carachuri*, the Court in *Moncrieffe* embraced a defendant-specific interpretation.  The Court held that the statute at issue there created two "exclusive" categories—felony and misdemeanor.  *Id.*  Importantly for our purposes, it then explained that no "conviction is 'presumptively' a felony" and that § 1229b(a)(3) would apply only if "the record of conviction of the predicate offense" had "necessarily establishe[d]" conduct implicating the felony category.  *Id.* at 196–98.

So in both *Carachuri* and *Moncrieffe*, the Supreme Court rejected an offense-specific interpretation of § 1229b(a)(3), reasoning that the word "convicted" modifies the term "punishable" in a way that requires the defendant-specific reading.  *See Carachuri*, 560 U.S. at 575–76; *Moncrieffe*, 569 U.S. at 197–98.  Faced with those decisions interpreting a statute with a materially identical structure to § 922(g)(1)'s, we must follow the Supreme Court's lead and conclude, as well, that the presence of the word "convicted" modifies "punishable" in a way that requires the defendant-specific interpretation of § 922(g)(1).

Tellingly, the very same circuit courts that had embraced the offense-specific reading of § 922(g)(1) and other materially identical statutes before *Carachuri* reversed course thereafter.  The Supreme Court GVR'd Fourth and Eighth Circuit decisions adopting offense-specific interpretations in light of *Carachuri*, and on remand both courts renounced their earlier positions and embraced the

defendant-specific reading. *See Simmons*, 649 F.3d at 239 (abrogating *Jones*), 241; *Haltiwanger*, 637 F.3d at 882–83 (overruling *Guzman-Tlaseca*). The Ninth and Tenth Circuits, both of which had also initially read § 922(g)(1) in an offense-specific manner, soon followed suit, likewise overruling their pre-*Carachuri* precedents. *See Valencia-Mendoza*, 912 F.3d at 1219 (overruling *Murillo*); *Brooks*, 751 F.3d at 1209 (overruling *Hill*).[4]

★   ★   ★

Accordingly, despite what we take to be strong textual indications that § 922(g)(1) might best be understood in an offense-specific manner—such that it covers any crime for which the law authorizes punishment of more than a year in prison, regardless of any particular defendant's situation—we are constrained by Supreme Court precedent to conclude that the statute must be read

---

[4] The lone exception to this trend is a post-*Carachuri* decision of the D.C. Circuit that appears to adopt an offense-specific reading, but it doesn't discuss *Carachuri* or any of the circuit-court decisions that flipped their interpretations in *Carachuri*'s wake. *See Schrader v. Holder*, 704 F.3d 980, 986 (D.C. Cir. 2013). We also note that Judges Duncan and Agee dissented from the Fourth Circuit's reversal in *Simmons*. They focused on textual differences between § 1229b(a)(3) and the statutory provisions at issue there, 21 U.S.C. § 841(b)(1)(D), 802(44). *See Simmons*, 649 F.3d at 250 (Duncan, J., dissenting); *id.* at 250–59 (Agee, J., dissenting). True, the statutes aren't precisely identical—either to each other or to § 922(g)(1)—but for reasons explained above the line, § 1229b(a)(3) is *materially* identical both to § 922(g)(1) and to the provisions at issue in *Simmons*, at least as the Supreme Court has interpreted them. *Moncrieffe*, in particular, seems to foreclose any argument that the statutes are meaningfully different. *See supra* at 9–10.

in a defendant-specific manner to apply only when the defendant was himself punishable by more than a year's imprisonment.

## B

Presumably recognizing as much, the government has a backup argument.  It contends in the alternative that the term "imprisonment" covers more than just im-*prison*-ment—more, that is, than time in the slammer, and, in particular, that it includes time in a community-corrections program or jailtime that could follow from the hypothetical revocation of a suspended sentence.  So understood, the government insists, Gaines himself actually *was* "punishable"—and indeed punished—"by *imprisonment* for a term exceeding one year."  18 U.S.C. § 922(g)(1) (emphasis added).  We are not persuaded.

The government initially asserts that we should look to state law to determine what constitutes "imprisonment" for § 922(g)(1) purposes—and that "Alabama courts make clear that a term of imprisonment can be served *through* community corrections."  Br. of Appellees at 27–29 (collecting cases).  With respect, we think the government's major premise is incorrect.    Unless Congress "plain[ly] indicat[es]" otherwise—which it hasn't here—when construing a term in a federal law we use traditional tools of statutory interpretation and look to federal precedent, not to state rules and practices.  *Taylor v. United States*, 495 U.S. 575, 591 (1990) ("[A]bsent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law . . . ." (citation modified)).

24-10117                Opinion of the Court                13

In search of the required "plain indication," the government points to 18 U.S.C. § 921(a)(20). That statute opens by explaining—for federal-law purposes—that "[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include" either (A) federal or state antitrust, unfair-trade-practice, or similar business-related offenses or (B) state offenses classified as misdemeanors punishable by less than two years in prison. It then says the following, the first sentence of which the government insists requires us to defer to Alabama law's understanding of "imprisonment":

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

*Id.*

We think the government overreads a single sub-subclause of § 921(a)(20). The sentence it quotes says only that *"[w]hat constitutes a conviction* of such a crime"—that is, a crime punishable by more than a year in prison—shall be determined in accordance with the law of the jurisdiction in which the predicate proceedings were held. *Id.* (emphasis added). In *Beecham v. United States*, 511

U.S. 368 (1994), the Supreme Court dubbed the sentence that the government emphasizes the "choice-of-law clause" and interpreted it this way: "Section 922(g) imposes a disability on people who 'ha[ve] been convicted.' *The choice-of-law clause defines the rule for determining '[w]hat constitutes a conviction.'*" *Id.* at 371 (emphasis added). We read *Beecham* as cabining the role of the choice-of-law clause to determining whether a "conviction" exists—and as not extending to the definition of the term "imprisonment." So, for instance, the choice-of-law clause directs a reviewing court to look to the law of the jurisdiction in which the predicate proceedings were held to determine whether a proper "conviction" resulted— say, from a guilty plea, a nolo contendere plea, etc. *Compare, e.g., United States v. Willis*, 106 F.3d 966, 967–70 (11th Cir. 1997) (relying on § 921(a)(20) to hold that, under the governing state law, a nolo plea in which the adjudication has been withheld was not a "conviction" for § 922(g)(1) purposes), *with, e.g., United States v. Anton*, 546 F.3d 1355, 1357 (11th Cir. 2008) (relying on § 921(a)(20) to hold that, under the governing state law, a nolo plea following an adjudication of guilt was a "conviction" for § 922(g)(1) purposes).[5]

---

[5] Our decision in *United States v. Nix*, 438 F.3d 1284 (11th Cir. 2006), which the government cites, is not to the contrary. We said there that "[t]he only limitation on predicate convictions contained in § 922(g)(1) itself is that they must be 'punishable by imprisonment for a term exceeding one year,' *and it is that condition which § 921(a)(20) provides 'shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.'*" *Id.* at 1285 (emphasis added). Although the government never quite specifies, its theory is presumably that the italicized phrase extends the choice-of-law clause's application to

24-10117               Opinion of the Court                    15

To be sure, there are numerous instances in which a state conviction might bear on the application of a federal law. But that doesn't mean that we *define terms* in the federal law by reference to state law. Just the opposite, in fact, and *Carachuri* is illustrative. There, the Court explained that while a state-law felony can trigger § 1229b(a)(3), "in order to be an 'aggravated felony' for immigration law purposes, a state drug conviction must be punishable as a felony under *federal* law." 560 U.S. at 569. We think it clear, therefore, that the term "imprisonment" in § 922(g)(1) must be interpreted in accordance with ordinary rules of statutory interpretation, as informed by federal law.

So, state-law characterizations aside, how, as a matter of federal law, should § 922(g)(1) be understood? We begin with the most fundamental rule of all: "[T]he oldest and most commonsensical interpretive principle" is that "[i]n their full context, words mean what they conveyed to reasonable people at the time they were written . . . ." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 15–16 (2012). Accordingly, we

---

the entire phrase "punishable by imprisonment for a term exceeding one year" and thus to the word "imprisonment."

Clever, but not right. We made clear in *Nix* that the defendant there "d[id] not deny that his Alabama conviction was for a crime punishable by a term of imprisonment exceeding one year" and that "it [wa]s undisputed that his marijuana conviction was punishable by a term of imprisonment exceeding one year." *Id.* Because the applicability of that requirement was undisputed, the language the government cites wasn't necessary to—and really had nothing to do with—the case's holding.

ask how the ordinary person would have understood the term "imprisonment" at the time Congress enacted what is now § 922(g)(1) in 1961. *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961).

Although not always foolproof guides, dictionaries are a decent place to begin the search for ordinary understanding. And both ordinary-language and legal definitions of the cognate word "imprison" strongly indicate that "imprisonment" was (and is) commonly understood to refer to actual confinement in a prison or jail. The contemporaneously published *Webster's Third*, for instance, primarily defines "imprison" to mean "to put in prison : confine in a jail," *Imprison*, *Webster's Third New International Dictionary* 1137 (1961), and only secondarily as an analogy—"to limit, restrain or confine as if by imprisoning," *id.* (providing, as one example, "[*imprison*]*ed* little sausages in pastry and baked them"). The pertinent edition of *Black's* likewise focuses on the formal definition—"[t]o put in a prison; to put in a place of confinement"—and only secondarily on an analogical definition—"[t]o confine a person, or restrain his liberty, in any way." *Imprison*, *Black's Law Dictionary* (4th ed. 1968). And frankly, it seems to us inconceivable that, as used in a statute trained on serious criminal offenses, the term "imprisonment" would be understood by the ordinary American, in 1961 or today, to cover *any* limitation on one's freedom—tellingly, not even the government advances such a sweeping

interpretation.  Section 922(g)(1) is thus properly read to employ the usual—and narrower—definition.[6]

The overwhelming weight of persuasive authority in a related context—interpreting the U.S. Sentencing Guidelines—supports that commonsense conclusion.  Then-Judge Alito explained more than two decades ago that, as used in U.S.S.G. § 5G1.3, the term "imprisonment" doesn't cover parole, probation, supervised release, home detention, or other similar non-jail limitations on personal liberty.  *See United States v. Pray*, 373 F.3d 358, 362 (3d Cir. 2004) (collecting cases).  Rather, he wrote for the Third Circuit—citing common-language and legal definitions—"[i]n ordinary usage, 'imprisonment' generally means physical confinement." *Id.* at 361.  Moreover, he emphasized that the common, everyday understanding of the term comported with the clinical meaning:  "For example, if a parolee were informed at the end of a parole revocation hearing that the outcome was 'imprisonment,' the parolee would not think that this meant that he was going to be returned to parole." *Id.*  Judge Alito also noted that with a single outlying exception, "every other court that ha[d] considered the question

---

[6] The word's "im-" prefix confirms as much.  "Im-" is a variation of the prefix "in-" that occurs when the next letter in line is a "b," "m," or "p."  *See in- or il- or im- or ir- prefix*, *Webster's Third* 1139.  The "in-" (and thus the "im-") prefix is used to indicate *location*: "in : within : inward : into : toward : on." *Id.*  Examples of words using the "im-" version of the prefix include "imperil" ("to bring into peril") and "impanel" ("to enter in or on a panel"). *Imperil*, *Webster's Third* 1133; *Impanel*, *Webster's Third* 1131.  The prefix ("im-") transforms the root word ("peril," "panel," etc.) into a verb that means to place the subject *in* the root word.  Just so here.  "Imprison" means to place the subject *in* prison.

ha[d] held that parole, supervised release, and probation do not qualify as 'imprisonment' under U.S.S.G. § 5G1.3." *Id.* at 362 (citing decisions of the First, Fourth, Seventh, and Ninth Circuits); *see also United States v. Rosado*, 254 F. Supp. 2d 316, 319 (S.D.N.Y. 2003) ("The Guidelines use the word imprisonment in several sections, and the term appears to consistently mean time spent *in jail*, as opposed to any form of release.").[7]

In support of its novel and more liberal interpretation of the word "imprisonment," the government cites 18 U.S.C. § 3624(c). But that statute is pretty far afield of § 922(g)(1) and thus, we think, of only limited relevance. Under it, the Director of the Bureau of Prisons is directed to ensure that a prisoner "spends a portion of the final months" of "a term of imprisonment" under "conditions that will afford [him] a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community"—such as in a "community correctional facility." 18 U.S.C. § 3624(c)(1). The government's reliance on § 3624, though, boomerangs back around on itself. True, that statute provides that the waning days of a "term of imprisonment" may be spent outside the four walls of prison, but in so doing it confirms that, except in that narrow window, "imprisonment" means exactly what the dictionaries attest and common usage confirms: *in prison*. *See also, e.g.*, 18 U.S.C.

---

[7] The lone exception was *United States v. French*, in which the Eighth Circuit relied on a state statute in adopting a broader definition of "imprisonment." 46 F.3d 710, 717 (8th Cir. 1995). Notably, Judge Alito rejected that court's reliance on state law for precisely the reasons that we have rejected the government's. *See Pray*, 373 F.3d at 362; *supra* at 17–18.

§ 3621(b) (describing the "place of the prisoner's imprisonment" as being somewhere with "bed[s]" and as being subject to the "minimum standards of . . . habitability"). So § 3624 doesn't get the government very far—and certainly provides no warrant for ignoring the ordinary understanding of the term "imprisonment."[8]

★   ★   ★

For these reasons, we hold that, as used in § 922(g)(1), the term "imprisonment" means confinement in a prison or jail, not participation in some non-carceral community-corrections program or the like.

## C

Having done the hard work of interpreting § 922(g)(1), applying it to Gaines's case is relatively straightforward. To recap, § 922(g)(1) reads as follows: "[I]t shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce[] any firearm or ammunition." We have concluded that, under *Carachuri* and *Moncrieffe*, we are obliged to read § 922(g)(1) in a defendant-specific manner, such that its application depends on the length of the term of imprisonment to which a particular criminal defendant was potentially subject given the

---

[8] The government's citation to 18 U.S.C. § 3622, suffers from the same flaw, only more acutely. That provision specifies the circumstances in which "[t]he Bureau of Prisons may release a prisoner *from the place of his imprisonment* for a limited period." 18 U.S.C. § 3622 (emphasis added).

facts and circumstances of his case. And we have concluded that, as used in § 922(g)(1), the term "imprisonment" refers to actual confinement in a prison, jail, or comparable facility. The question, therefore, is whether, given the circumstances of his case, Gaines himself was actually subject to a sentence requiring him to spend at least a year in such a facility.

He was not. For reasons already explained, given Gaines's criminal history, Alabama law foreclosed the possibility that he would serve any time in prison for his Class D felony. *See supra* at 2–3. To be sure, Gaines was subject to other punishments: probation, drug court, pretrial diversion, and time in a "community corrections program." Ala. Code § 15-18-8(b), (e) (2019) (amended 2023). But none of those, as implemented in Alabama, is tantamount to jail-like "imprisonment."

The only one of the sanctions that Gaines faced that requires any explanation is "community corrections." In multiple places and ways, though, Alabama law makes clear that a community-corrections program isn't comparable to prison. As an initial matter, the 2019 statute under which Gaines was sentenced expressly distinguishes community-corrections programs from "prisons" and "jail-type institution[s]." *Id.* § 15-18-8(b). It states that unless a judge sentences a Class C or Class D felon to probation, drug court, or a pretrial-diversion program, he "shall order that the convicted defendant be confined in a prison, jail-type institution, treatment institution, or community corrections program for a Class C felony offense or in a consenting community corrections program for a

Class D felony offense." *Id.* Two aspects of that statute are instructive. First, even with respect to Class C felons, it describes a "community-corrections program" as an alternative to—not the equivalent of—"a prison [or] jail-type institution." *Id.* Second, and relatedly, the statute makes clear that while a Class C felon can be confined in a prison or jail, a Class D felon like Gaines cannot be; rather, a Class D felon can be sentenced only to probation, drug court, pretrial diversion, or "confine[ment] . . . in a consenting community-corrections program." *Id.* By its terms, therefore, the statute forecloses the possibility that a defendant in Gaines's shoes can be confined in an actual prison or jail.

Separately, in multiple respects, the Alabama Community Punishment and Corrections Act, *see* Ala. Code § 15-18-170 *et seq.*, makes clear that a community-corrections sentence isn't tantamount to imprisonment. First, and most conspicuously, the Act expressly defines the term "[c]ommunity punishment and corrections program" as "an alternative to incarceration." Ala. Code § 15-18-171(6). The "alternative to incarceration" language was added to the statute in 2003, and contemporaneous dictionaries (unsurprisingly) define the term "incarceration" and its cognates as synonyms of "imprisonment" and its cognates. *See, e.g.*, *Incarceration*, Black's Law Dictionary (7th ed. 1999) ("[T]he act or process of confining someone; IMPRISONMENT."); *Incarcerate*, Merriam-Webster's Dictionary of Law (1996) ("IMPRISON."); *Incarcerate*, American Heritage Dictionary of the English Language (4th ed. 2001) ("1. To imprison; 2. To confine."). So like the statute under which Gaines was sentenced, the Act indicates that a community-

corrections sentence is an alternative to—*i.e.*, different from—traditional imprisonment. *Accord, e.g., id.* § 15-18-175(d)(1) (describing community corrections as an "alternative to prison").

Second, and similarly, the Act identifies one of its "goals" as being to "reduce the number of offenders committed to correctional institutions and jails by punishing such offenders in alternative punishment settings." *Id.* § 15-18-173(3). So again, the Act identifies community corrections as an "alternative" to incarcerating offenders in "correctional institutions and jails."

Third, the Act expressly catalogues the types of facilities and services that might constitute "[c]ommunity-based programs." *Id.* § 15-18-180(b). None of those listed bears any meaningful resemblance to prison. For instance: (1) "[c]ommunity service supervision; victim restitution, community detention and restitution centers; day reporting centers; victim-offender reconciliation programs; home confinement/curfew; electronic surveillance; intensive supervision probation; alcohol/drug outpatient treatment and psychiatric counseling"; (2) "[s]hort-term community residential treatment options that involve close supervision in a residential setting," including "[d]etoxification centers; community detention centers for special needs offenders and probation and parole violators; and inpatient drug/alcohol treatment"; (3) "[r]esidential in-house drug and alcohol treatment for detoxification and residential and nonresidential drug and alcohol counseling"; and even (4) "[c]hurches or other nonprofit facilities that provide religious-

based counseling, education, or other rehabilitative services." *Id.* § 15-18-180(b)(1)–(3), (5).

Finally, the Act specifies the circumstances under which a community-corrections sentence may be altered or revoked—and, in so doing, clearly distinguishes between community-corrections programs and actual imprisonment. For instance, the Act provides that if the offender violates a condition of his community-corrections sentence, the court may (among other options) "[m]odify the conditions of serving the sentence, possibly including the inclusion of short periods of confinement in local facilities . . . ." *Id.* § 15-18-175(d)(3)(a)(4). The Act then goes on to state that "[t]he court shall not revoke" a community-corrections sentence "and order the confinement to prison of the offender" unless the court finds that "[n]o measure short of confinement" will adequately protect the community and address the seriousness of the offender's violation. *Id.* § 15-18-175(d)(3)(d). Both provisions make clear that a community-corrections sentence does not itself entail "confinement" in "prison"—which, to the contrary, results only from both (1) a violation and (2) a judicial finding of necessity.

Bottom line: Alabama law, both as written and as interpreted and implemented, makes clear that a "community corrections program" of the sort referred to in the statute under which

Gaines was sentenced does not constitute "imprisonment" as that term is used in 18 U.S.C. § 922(g)(1).[9]

★ ★ ★

Because Gaines couldn't receive any real-deal jail time for his Class D felony, that offense doesn't qualify as a "crime punishable by imprisonment for a term exceeding one year" within the meaning of § 922(g)(1).[10]

---

[9] We acknowledge some inconsistency in the way Alabama courts have referred to community-corrections programs. *Compare, e.g.*, *Ex parte Hill*, 71 So. 3d 3, 8 (Ala. 2009) ("[T]he trial court . . . sentenced Hill to 20 years' imprisonment, to be served in the community-corrections program."), *with, e.g.*, *Turner v. State*, 981 So. 2d 444, 445 n.1 (Ala. Crim. App. 2007) ("The Montgomery Community Corrections Program . . . provides sanctions that lie somewhere between prison and routine probation with respect to their restrictiveness."), *and, e.g.*, *State v. Wright*, 976 So. 2d 1053, 1056 (Ala. Crim. App. 2007) ("Just as a 'traditional' inmate (that is, an inmate incarcerated within prison walls) who escapes from a penal institution can be charged with first-degree escape . . . an inmate in the community corrections program who fails to stay within the parameters of the dictates of the program can also be charged with first-degree escape . . . ."). But we think the applicable statutes make clear that a community-corrections program is not the functional equivalent of prison for present purposes.

[10] One last thing: Although the government doesn't seriously press the issue on appeal, the district court seemed to think that it was bound to deny Gaines's motion for judgment of acquittal by our decision in *United States v. Gardner*, 34 F.4th 1283 (11th Cir. 2022). *See* Trial Tr. Vol. 3, 308, Sept. 13, 2023 ("[I]f we did not have the *Gardner* case in the Eleventh Circuit, I probably would be going [Gaines's] way. But . . . the Eleventh Circuit . . . has said we . . . take a categorical approach to looking at this matter."). We disagree. In *Gardner*, we held that, for purposes of the serious-drug-offense provision of the Armed

## IV

The Class D state-law felony for which Gaines was convicted is not a "crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Accordingly, the evidence at trial was insufficient to sustain a conviction for that offense. We therefore **VACATE** the district court's order denying Gaines's motion for judgment of acquittal and **REMAND** with instructions for it to enter the judgment in his favor.

---

Career Criminal Act, the "maximum term of imprisonment . . . prescribed by law," 18 U.S.C. § 924(e)(2)(A)(ii), is the statutory maximum penalty—not, as the defendant there contended, the upper end of a state's applicable sentencing-guidelines range, *Gardner,* 34 F.4th at 1288–90. In so holding, we applied a "categorical approach"—meaning, as we used the term there, that "we 'look[ed] to the maximum sentence for the offense category' and not to 'the particular sentence' the defendant received or to the 'particular facts of the defendant's crime.'" *Id.* at 1286 (quoting *McCarthy v. United States*, 135 F.3d 754, 757 (11th Cir. 1998)). Notably, though, the Supreme Court has held that in determining the "maximum term of imprisonment . . . prescribed by law" for ACCA purposes, a court should consider *all* state statutes that affect the maximum prison term to which a defendant is subject given his conviction record. *See United States v. Rodriquez*, 553 U.S. 377, 393 (2008) (holding it proper to consult state recidivist-offender statutes that enhanced the base statutory maximum where the defendant's conviction record supported an enhancement). Thus, even if it applied here foursquare, *Gardner*'s "categorical approach" wouldn't move the needle because, for reasons already explained, under the law applicable at the time—including, most notably, Ala. Code § 15-18-8(b) (2019) (amended 2023)—the statutory maximum penalty for a Class D felon with Gaines's conviction record wouldn't involve any time in a prison or comparable facility.